# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

UP TO $128,370.18 IN FUNDS ON DEPOSIT IN
JP MORGAN CHASE BANK ACCOUNT ENDING
IN DIGITS 2010, HELD IN THE NAME OF GENERAL
LEDGER SUSPENSE

Case Number: 19-MJ-1275

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Park J. Jones, being duly sworn depose and say:

I am a Special Agent with the Internal Revenue Service, Criminal Investigation, and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, up to $128,370.18 in funds on deposit in JP Morgan Chase Bank account ending in digits 2010, held in the name of General Ledger Suspense, that (1) is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), as property that consists of, or is traceable to, proceeds of wire fraud committed in violation of 18 U.S.C. § 1343, and (2) is civilly forfeitable under 18 U.S.C. §§ 981 (a)(1)(A) and 984, and criminally forfeitable under 18 U.S.C. § 982(a)(1), as property involved in, or traceable to property involved in, money laundering offenses committed in violation of 18 U.S.C. §§ 1956 (a)(1) and 1957, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b)(2) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

❏ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Signature of Affiant
Park J. Jones, IRS-CI

Sworn to before me, and subscribed in my presence

6/26/19 @ 3:00 p.m.
Date and time issued

at Milwaukee, Wisconsin
City and State

William E. Duffin, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANTS

I, Park J. Jones, having been duly sworn on oath, state as follows:

## Affiant's Background

1. I am employed as a Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI) and have been so employed since September 2005. My responsibilities as a Special Agent include the investigation of potential criminal violations of the Internal Revenue Code under Title 26 of the United States Code as well as related Title 18 and Title 31 offenses. In my career, I have conducted multiple investigations involving money laundering and have obtained search and seizure warrants for criminal proceeds and property involved in money laundering. In the course of those investigations, I have used various investigative techniques, including undercover operations, reviewing physical and electronic evidence, and obtaining and reviewing financial records. In the course of those investigations, I have also become familiar with techniques that criminals use to conceal the nature, source, location, and ownership of proceeds of crime and to avoid detection by law enforcement of their underlying acts and money laundering activities.

2. Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included in this affidavit every detail I know about this investigation. Rather, I have included only the information necessary to establish probable cause for the requested seizure warrant.

3. The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, information I have obtained in the course of this investigation from witnesses having personal knowledge of the events and circumstances described herein, and from other law enforcement officers, all of whom I believe to be truthful and reliable.

## Property Sought to be Seized

4. I submit this affidavit in support of an application for a warrant to seize up to $128,370.18 in funds on deposit in JP Morgan Chase Bank account ending in digits 2010 ("JPM 2010") held in the name of General Ledger Suspense.

5. Based on the facts and circumstances set forth below, I submit that there exists probable cause to believe that up to $128,370.18 on deposit in JPM 2010 are:

   a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c);

b. Funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C. §§ 1956 (a)(1) and 1957, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981 (a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and

c. Subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

**Facts Supporting Findings of Probable Cause for Issuance of Seizure Warrant**

6. Over the last few years, law enforcement has seen an increase in business email compromise ("BEC") schemes. A BEC scheme is a form of cybercrime which uses a fraudulent email to obtain funds from an organization or business entity. The scheme typically targets employees in financial roles and with access to entity funds within the victim organization. The fraudulent email will provide false instructions regarding financial transactions in order to defraud the employee into sending money or sensitive personal identifying data to the fraudster's bank account.

7. St. John XXIII is a religious institution located in Port Washington, Wisconsin. CG Schmidt is a construction management and general contracting firm based in Milwaukee, Wisconsin. St. John XXIII hired CG Schmidt as a contractor to assist with a construction project at St. John XXIII.

8. On or about February 26, 2019, the St. John XXIII accounts payable department received a letter by email attachment purporting to be from an individual having the initials B.N., the Chief Financial Officer of CG Schmidt, requesting the direct deposit/ACH authorization form to update CG Schmidt's banking information.

9. A few days after the receipt of that letter, an individual having the initials T.A., who purported to be an employee of CG Schmidt, contacted an employee at St. John XXIII via phone. T.A. wanted to confirm receipt of the letter and inquired about future payments. T.A. then sent the employee at St. John XXIII a follow up email.

10. The emails to St. John XXIII were sent from the email address XXXXXerg@cgschmidtinc.com, while CG Schmidt's actual email domain is XXXXX@cgschmidt.com.

11. Based upon the phone conversations and emails from XXXXXerg@cgschmidtinc.com, the St. John XXIII employee changed the bank account information for payments made to CG Schmidt to BBVA Compass Bank account ending in digits 8886 ("BBVA 8886").

12. On or about March 4, 2019, the St. John XXIII employee initiated a wire transfer of $510,058.97 from St. John XXIII's bank account at Port Washington State Bank to BBVA 8886 as payment for construction services performed by CG Schmidt.

2

13.     I reviewed the BBVA Compass Bank records associated with BBVA 8886. The account was opened on June 11, 2018, in the name of MJT Ventures, with the owner and authorized signor listed as Malcolm Tayloy ("Tayloy").

14.     Tayloy used a British passport as an identifying document to open the account. A search of border entry records did not reveal any entries of Tayloy into the United States. It is believed the passport used by Tayloy is fraudulent.

15.     The beginning balance in BBVA 8886 on March 1, 2019, was $115.92.

16.     After the March 4, 2019 St. John XXIII wire transfer of $510,058.97 to BBVA 8886 – and in an apparent attempt to conceal the nature, source and location of the proceeds of the BEC fraud scheme – two online/mobile wire transfers from BBVA 8886 were conducted on March 5 and 6, 2019, in the amounts of $89,655.09 and $97,812.09, respectively, for a total of $187,467.18. These transfers were to JP Morgan account ending in digits 5526 ("JPM 5526"), held in the name of Daniel Thomas d/b/a Ashraf Ventures. The balance in JPM 5526 prior to these transfers was $88.03.

17.     I reviewed bank records associated with JPM 5526. The account was opened in the Los Angeles, California on January 24, 2019, in the name of Daniel Thomas ("Thomas") d/b/a Ashraf Ventures. The only authorized signor on the account is Thomas.

18.     Thomas presented a Texas driver's license to open JPM 5526. State of Texas Department of Public Safety records show that the driver's license was fraudulent.

19.     On March 13, 2019, Port Washington State Bank contacted an employee having the initials M.B. at St. John XXIII and informed M.B. that the wire transfer to BBVA 8886 was fraudulent because the funds were transferred to an account titled MJT Ventures rather than to CG Schmidt.

20.     Later that day, the fraud department at BBVA Compass Bank then informed M.B. that the $510,058.97 in funds that St. John XXIII had wire transferred to BBVA 8886 already had been transferred out of BBVA 8886.

21.     A representative from CG Schmidt confirmed the following:

    a.  No one had permission to use CG Schmidt's logo or letterhead to request that CG Schmidt's bank account be changed;

    b.  CG Schmidt is not affiliated with the BBVA Compass Bank account ending in digits 8886;

    c.  The emails from XXXXXerg@cgschmidtinc.com were fraudulent;

    d.  The CG Schmidt CFO listed on the February 26, 2019 letter has not been employed with the company for the last 10 years; and

  e.  The employee name on the emails, with the initials T.A., has never been employed at CG Schmidt.

  22.  On March 26, 2019, JP Morgan bank froze JPM 5526 due to suspicions of fraud. The funds frozen in JPM 5526 totaled $128,370.18.

  23.  The entire $128,370.18 sought to be seized pursuant to the requested seizure warrant was transferred by JPM's fraud department from JPM 5526 to suspense account JPM 2010.

## Applicable Asset Forfeiture Provisions

  24.  Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

  25.  Section 984 (a) provides in part:

> (1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution
>
> > (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
> >
> > (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

  26.  18 U.S.C. § 984(b) provides: "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

  27.  Thus, under Section 984, a court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

  28.  I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after a restraining order or similar process has been issued to a financial institution, the

4

funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, seizure warrants would be the most effective way to assure the availability of the monies sought to be seized for forfeiture by the accompanying seizure warrant.

## Conclusion

29. Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that up to $128,370.18 in funds on deposit in JP Morgan Chase Bank account ending in digits 2010 are:

    a.    Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c);

    b.    Funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C. §§ 1956 (a)(1) and 1957, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981 (a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and

    c.    Subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

###

5

Case 2:19-mj-01275-WED   Filed 07/09/19   Page 6 of 6   Document 1